# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY THADEN,<br><br>                Plaintiff,<br><br>vs.<br><br>TRANSWOOD, INC., TRANSWOOD CARRIERS, INC., and TRANSWOOD LOGISTICS, INC.,<br><br>                Defendants. | 8:17CV108<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Partial Motion to Dismiss Plaintiff's Complaint, ECF No. 7, filed by Defendants Transwood, Inc., Transwood Carriers, Inc., and Transwood Logistics, Inc. (collectively "Defendants"). For the reasons stated below, the Motion will be granted.

## BACKGROUND

The following facts are taken from Plaintiff Timothy Thaden's Complaint, ECF No. 1-1, which the Court accepts as true for the purposes of this Motion to Dismiss.

Defendants employed Thaden as a dispatcher from June 2013 through January 25, 2016. Thaden was disabled and, during his employment, requested accommodation for his disability. Specifically, on multiple occasions Thaden requested that Defendants post notices prohibiting smoking in Defendants' workplace. Defendants did not post such notices. On January 15, 2016, Thaden advised Defendants that he planned to file a complaint with the "State Health Department" regarding Defendants' refusal to post "No Smoking" signs. On January 25, 2016, Defendants terminated Thaden.

Thaden alleges that his termination was wrongful. Thaden filed a Complaint, Jury Demand, and Praecipe on February 27, 2017, in the District Court of Douglas County, Nebraska. *See* ECF No. 1-1. Defendants removed the action to this Court on March 30, 2017. ECF No. 1. In his Complaint, Thaden sets forth three separate counts. Count I alleges disability discrimination and failure to accommodate under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. §§ 12101 et seq., and the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 48-1104. Count II alleges retaliation for engaging in protected activity in violation of the ADAAA, NFEPA, Neb. Stat. Rev. §§ 20-1231, 20-124 (referred to collectively in this Memorandum and Order as the "Free Speech Statute"), Neb. Rev. Stat. § 20-148, and the Nebraska Clean Air Act, Neb. Rev. Stat. §§ 71-5701, et seq. Count III alleges that Defendants violated the posting and enforcement provisions of the Nebraska Clean Air Act. Plaintiff seeks monetary damages for Defendants' purported violations of these laws.

Defendants argue that Thaden's claims arising under the Nebraska Clean Air Act and the Free Speech Statute must be dismissed because neither law creates a private right of action. Thaden concedes that the Complaint "could have been more artfully drafted," Pl. Br., ECF No. 9, Page ID 48, but argues that he may assert public policy violations under the Clean Air Act and the Free Speech Statute. Thaden requests leave to amend the Complaint to clarify that he is alleging public policy violations. Defendants assert that leave would be futile and the claims should be dismissed.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court

2

should freely give leave when justice so requires."[1] "[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 922 (8th Cir. 2015) (citation omitted). "Futility is a valid basis for denying leave to amend." *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016) (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.,* 559 F.3d 818, 822 (8th Cir. 2009). Where a court "denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement and withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

---

[1] The Court's local rules also require parties to follow certain requirements when requesting leave of Court to amend a pleading:

> A party who moves for leave to amend a pleading (including a request to add parties) must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments. Except as stated in these rules or court order, the proposed amended pleading must be a complete pleading that, if allowed to be filed, supersedes the original pleading in all respects; no part of the prior pleading may be incorporated into the proposed amended pleading by reference. The motion for leave to amend must (1) specifically state the proposed amendments and (2) state whether the motion is unopposed or opposed, after conferring with opposing parties.

NECivR 15.1(a).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

4

## DISCUSSION

The general rule in Nebraska "is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason." *Jackson v. Morris Commc'ns Corp.*, 657 N.W.2d 634, 636 (Neb. 2003). The Nebraska Supreme Court recognizes a public policy exception to this rule. *Id.* "Under the public policy exception, we will allow an employee to claim damages for wrongful discharge when the motivation for the firing contravenes public policy." *Id.* at 637. The public policy exception is narrow:

> We believe that it is important that abusive discharge claims of employees at will be limited to manageable and clear standards. The right of an employer to terminate employees at will should be restricted only by exceptions created by statute or to those instances where a very clear mandate of public policy has been violated.

*Id.* (quoting *Ambroz v. Cornhusker Square Ltd.*, 416 N.W.2d 510, 515 (Neb. 1987).

Thaden claims that his termination violated the public policies pronounced in the Nebraska Clean Air Act and the Free Speech Statute. Yet, as Thaden concedes in his brief, neither statute expressly authorizes a private right of action. Even if the statutes pronounce a public policy, the Complaint fails to demonstrate that the public policy exception for termination of at-will employees applies. Nor has Thaden proposed any amendment to his pleading that would support a plausible claim with respect to Counts II and III of his Complaint.

### I. Violation of the Clean Air Act

Thaden alleges that Defendants retaliated against him by terminating him after he requested that Defendants comply with the Clean Air Act (Count II) and that he suffered damages as a result of Defendants' failure to comply with the Clean Air Act

5

(Count III). The Court concludes that the public policy exception does not apply to either claim.

### A. Count II: Retaliation Under the Clean Air Act

The statutory scheme of the Clean Air Act vests the Nebraska Department of Health and Human Services ("DHHS") with the right to "institute an action in any court with jurisdiction to enjoin a violation of the Nebraska Clean Indoor Air Act." Neb. Rev. Stat. Ann. § 71-5732(1). Section 71-5732(1) permits any interested party to report potential violations to the DHHS. Section 71-5732(2) states that "[n]o employer shall discharge, refuse to hire, or in any manner retaliate against an employee . . . because such employee . . . reports or attempts to report a violation of the act." Thaden argues that this language supports application of the public policy exception to his retaliation claim.

Thaden argues that the Nebraska Supreme Court's decision in *Wendeln v. The Beatrice Manor, Inc.*, 712 N.W.2d 226, 238 (Neb. 2006), supports his position. In *Wendeln*, the plaintiff brought an action against her former employer, alleging retaliatory discharge in contravention of public policy. 712 N.W.2d at 232. The plaintiff, a nursing home employee, reported suspected patient abuse as required by the Nebraska Adult Protective Services Act ("APSA"), Neb. Rev. Stat. § 28-372(1). Failure to report under the APSA resulted in potential criminal sanctions. *Id.* The court permitted the plaintiff's wrongful-discharge claim to proceed under the public policy exception holding "that the purpose of the APSA would be circumvented if employees mandated by the APSA to report suspected patient abuse could be threatened with discharge for making such a report." *Wendeln*, 712 N.W.2d at 239. The court reasoned that the mandatory reporting

requirement went "well beyond merely praiseworthy conduct." *Id.* (citation omitted). The purpose of the criminal sanction of the APSA was to ensure mandatory reporting, thus, "a public policy exception to the employment-at-will doctrine applies to allow a cause of action for retaliatory discharge when an employee is fired for making a report of abuse as mandated by the APSA." *Id.* at 240.

Unlike the APSA, the Clean Air Act does not contain a mandatory reporting requirement. The reporting of violations of the Clean Air Act is expressly permissible, but not mandatory. See § 71-5732(2) ("Any interested party *may* report possible violations of the act to such departments.") (emphasis added). In *Wendeln*, the mandatory reporting requirement pushed the plaintiff's report beyond "merely praiseworthy conduct" not protected by the public policy exception. *Wendeln*, 712 N.W.2d at 239. Because the Clean Air Act does not contain a mandatory reporting requirement, the reasoning in *Wendeln* regarding the mandatory reporting requirements does not apply.

Further, the retaliation provision of § 71-5732(2) expressly prevents retaliation against an employee who "reports or attempts to report" a violation of the Clean Air Act. Although Thaden alleges that he announced his intention to file a complaint with the DHHS, there is no allegation that he did so or attempted to do so. Thaden's argument would require the public policy to extend not only to reports of violations or attempts to report violations, but also threats to report violations of the Clean Air Act. The Nebraska Supreme Court has limited the public policy exception to those created by statute and "very clear mandate[s] of public policy." *See Jackson*, 657 N.W.2d at 637. Extending the policy stated in § 71-5732(2) to threats of a report would go beyond the language of the

7

statute and blur the "clear standard." *See id.* There is no "very clear mandate of public policy" regarding threats to report violations of the Clean Air Act. *Jackson*, 657 N.W.2d at 637. Thaden has not suggested that he could amending his Complaint to allege that he reported or attempted to report a Clean Air Act violation. Accordingly, his conduct is not protected by the public policy exception and his retaliation claims under the Clean Air Act in Count II must be dismissed.

### B. Count III: Wrongful Termination Under the Clean Air Act

Thaden argues that although there is no explicit private right of action under the Clean Air Act, the Nebraska Legislature articulated a public policy because it set forth criminal penalties for violations of the Act. "The Legislature articulates public policy when it declares certain conduct to be in violation of the criminal law." *Wendeln,* 712 N.W.2d at 238. In the context of a criminal statute, an action for wrongful discharge as a violation of public policy "lies only when an at-will employee acts in good faith and upon reasonable cause in reporting his employer's suspected violation of the criminal code." *Schriner v. Meginnis Ford Co.*, 421 N.W.2d 755, 759 (Neb. 1988).

In *Ludlow v. BNSF Railway*, the plaintiff, Kirk Ludlow, alleged he was terminated in violation of public policy when he reported a forgery. *Ludlow v. BNSF Ry. Co.*, No. 4:12CV3113, 2013 WL 3872930, at *2 (D. Neb. July 24, 2013). Ludlow argued that Nebraska law generally permitted a claim for wrongful discharge for reporting the violation of a crime. *Id.* at *23. This Court rejected Ludlow's argument, concluding that the Nebraska Supreme Court's application of the public policy exception was more narrow. *Id.* The Court noted that "employees are not protected from discharge 'for merely engaging in praiseworthy conduct consistent with public policy.'" *Id.* (quoting

8

*Wendeln,* 712 N.W.2d at 239). The Court concluded that because there was no evidence that Ludlow had a legal duty to report the alleged forgery, "his making of the report—though praiseworthy and consistent with public policy—is not protected under Nebraska's public policy exception to the at-will employment doctrine." *Id.*

In this case, Thaden did not report any potential criminal activity. The only potential basis for Thaden's claims are his requests to Defendants that they comply with the Clean Air Act and his subsequent threat to report continued violations to the DHHS. In *Ludlow*, even though Ludlow actually reported the alleged forgery, his conduct was not protected because he had no legal duty to report it. Similarly, in this case, Thaden had no legal duty to report violations of the Clean Air Act. Further, while Thaden alleges that he threatened to report Defendants' alleged violations, there is no allegation that he actually did so. Thus, based on the allegations in the Complaint, Thaden's requests—though praiseworthy and consistent with public policy—were not protected under the public policy exception for termination of at-will employment.

Thaden's request for leave to amend does not comply with NECivR 15.1 nor does he identify any other facts that would clarify his allegations. Accordingly, Count III must be dismissed and his request for leave to amend must be denied as futile.

**II. Violation of the Free Speech Statute**

Thaden broadly asserts that he should be allowed to amend the Complaint to plead that Defendants violated the public policy of maintaining free speech. Thaden argues that such a policy exists because Neb. Rev. Stat. § 20-123 states that it is the "public policy to protect, preserve, and perpetuate the constitutional right to freely speak, write, and publish on all lawful subjects." Under, Nebraska Revised Statute § 20-

124, "[a]ny individual, corporation, or municipality that attempts to interfere with or restrain the exercise" of free speech "either by ordinance or otherwise, shall be guilty of a misdemeanor." Thaden argues that he may assert a policy-based claim under §§ 20-123 and 20-124 because the Nebraska Legislature made it a crime for a corporation to interfere with or to restrain his free speech rights.

Thaden alleges that Defendants violated the Free Speech statute after Thaden engaged in whistleblower and/or protected activities. *See* Compl., ECF No. 1-1, Page ID 7. It is unclear whether Nebraska courts would permit a retaliation claim for damages under the Free Speech Statute. The only Nebraska case that has addressed §§ 20-123 and 20-124 as the basis of a private right of action is *Hartford v. Womens Servs., P.C.*, 477 N.W.2d 161 (Neb. 1991). In *Hartford*, the Nebraska Supreme Court held that based on § 20-124, "[w]hen the facts justify it, injunctive relief may be granted to protect the right of an individual to exercise that individual's first amendment right of free speech." 477 N.W.2d at 166 (citation omitted). The court did not address whether a claim under the Free Speech Statute could support a claim for remedies other than injunctive relief. Thus, it is unclear whether the policy stated in the Free Speech Statute would support Thaden's claim for damages.

Even if the policy pronounced in the Free Speech Statute supported a claim for damages, Thaden has not pled sufficient facts to support such a claim. In *Hartford*, the Nebraska Supreme Court implied that it would look to First Amendment jurisprudence to analyze a potential claim under the Free Speech Statute. *See* 477 N.W.2d at 166 (citing *ACORN v. City of Frontenac,* 714 F.2d 813 (8th Cir.1983)). Viewed as a free speech retaliation claim, Thaden must prove "that he engaged in protected activity, and that this

activity was a substantial or motivating factor in his employer's decision to terminate him." *McCullough v. Univ. of Arkansas for Med. Scis.*, 559 F.3d 855, 865 (8th Cir. 2009). To determine whether Thaden's speech was protected, the Court follows a two-step analysis. *Id.* "The first question is whether [Thaden's] speech can be 'fairly characterized as constituting speech on a matter of public concern.'" *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983)). "If the answer is no, then [Thaden's] claim fails because no protected speech is at issue." *Id.* "If the answer is yes, then [Thaden's] 'right to comment on matters of public concern must next be balanced with the employer's interest in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Sparr v. Ward,* 306 F.3d 589, 594 (8th Cir. 2002)).

Thaden's Complaint is devoid of any allegation that his speech was primarily a matter of public concern. "When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern." *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007) (citing *Bailey v. Dep't of Elem. & Secondary Educ.,* 451 F.3d 514, 518 (8th Cir. 2006)). "If the main motivation for the speech was furthering [Thaden's] 'private interests rather than to raise issues of public concern, [his] speech is not protected, even if the public would have an interest in the topic of her speech.'" *Altonen*, 487 F.3d at 559 (quoting *Bailey,* 451 F.3d at 518). In *Altonen*, the Eighth Circuit concluded that where an employee's primary motivation was to obtain access to her files rather than provide the public with information, the speech at issue was not a matter of public concern. *Id.* at 559-60.

In this case, the Complaint alleges summarily that, on numerous occasions, Thaden "engaged in protected activities and whistleblower actions as defined by law as he opposed actions/activities made illegal under state and federal law and spoke out of matters involving public concerns." Compl., ECF No. 1-1, Page ID 5. These legal conclusions, on their own, are insufficient to survive a motion to dismiss under Rule 12(b)(6). *See Brown*, 820 F.3d at 373. The only speech activities Thaden identifies in the Complaint were his requests for accommodation under the Clean Air Act and his threat to file a complaint with the DHHS regarding Defendants' alleged Clean Air Act violations. The Complaint makes clear that the purpose of these requests was to obtain accommodation for Thaden's disability. While these allegations may be sufficient to support his claim for retaliation under the ADAAA, the "context and content" of Thaden's lawsuit show that his speech was primarily motivated by his private interests and not his desire to raise issues of public concern. Thaden's request for leave to amend does not identify any other motivation for his speech beyond his own private interests, nor does he identify any other protected speech to support a retaliation claim under the Free Speech Statute. Accordingly, Thaden's claims under the Free Speech Statute will be dismissed.

**CONCLUSION**

Thaden's Complaint lacks allegations supporting his retaliation claims under the Clean Air Act and the Free Speech Statute. Accordingly, his claims under those laws in Count II must be dismissed. Thaden also fails to identify a legal basis for his claim for damages under the Clean Air Act. Accordingly, Count III will be dismissed. Thaden failed to comply with NECivR 15.1 and failed to identify how an amended complaint

would cure these deficiencies. Accordingly, his request for leave to amend will be denied as futile.

IT IS ORDERED:

1. The Partial Motion to Dismiss Plaintiffs' Complaint, ECF No. 7, filed by Defendants Transwood, Inc., Transwood Carriers, Inc., and Transwood Logistics, Inc., is granted;

2. Plaintiff's claims in Count II arising under Neb. Rev. Stat. §§ 20-1231, 20-124, and the Nebraska Clean Air Act, Neb. Rev. Stat. §§ 71-5701, et seq., are dismissed, with prejudice; and

3. Count III of Plaintiff's Complaint is dismissed, with prejudice.

Dated this 14th day of June, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge